UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X  Docket No.  17 CV 8544
BARRY MCGOWAN,

                         *Plaintiff,*

      v.                                             **COMPLAINT**

PHILLIPS EDISON & COMPANY LTD., PREP CO., LLC,   PLAINTIFF DEMANDS
PECO REAL ESTATE PARTNERS, LLC *and* MICHAEL   A TRIAL BY JURY
C. PHILLIPS, *individually*

                           *Defendants.*
---------------------------------------------------------------X

     Plaintiff, Barry McGowan, by his attorneys, Young & Ma, LLP and Catafago Fini LLP, complains of Defendants as follows:

### PRELIMINARY STATEMENT

     1.    Plaintiff Barry McGowan ("McGowan") was employed as Partner and Chief Executive Officer for Phillips Edison & Company Ltd., Phillips Edison & Company, PREP Co., LLC, and PECO Real Estate Partners, LLC ("collectively PECO" or "Defendants") who are collectively American owners, operators, acquirers and developers of shopping centers throughout the United States.  Over the last 25 years, Defendants' operations grew to more than 280 shopping centers in 32 states funded by private investment funds and high net worth individuals.  Defendants became involved in REITS.  Individual Defendant Michael C. Phillips ("Phillips" or "individual defendant") was, at all relevant times, PECO's Principal, President and CEO and McGowan's direct supervisor.

     2.    Plaintiff seeks damages and costs against Defendants retaliation under Fair Labor Standards Act, 29 U.S.C. § 215(a)(3) and New York Labor Law § 215 for adverse employment actions and termination for engaging in protected activity relating to his compensation, salary, and terms and conditions of his employment.

1

3.      Plaintiff also seeks damages and costs against Defendants for breach of contract, breach of fiduciary duty, fraudulent inducement, breach of covenant of good faith and fair dealing, and quantum meruit in violation of the New York State common law.

4.      Plaintiff also seeks damages and costs against Defendants for other violations of New York Labor Law including for his engagement in legal recreational activity under New York Labor Law § 201-D, failure to provide him with proper wage statements under New York Labor Law § 195, and improper wage deduction due to failure to reimburse for expenses under New York Labor Law § 193.

**PARTIES**

5.      Plaintiff, at all times relevant hereto, was and is a resident of Westchester County in the State of New York.

6.      Upon information and belief, at all times relevant hereto, Defendant Phillips Edison & Company Ltd. is a foreign limited liability company in New York with its principal office at 10 Rockefeller Plaza, Suite 920, New York, NY 10020 in New York County.  At all relevant times hereto, Plaintiff worked for Phillips Edison & Company Ltd. in New York City.

7.      Upon information and belief, at all times relevant hereto, Defendant PREP Co., LLC is a foreign limited liability company in Utah and New York with offices at 1790 Bonanza Drive Suite 201, Park City, Utah 84060 in Summit County and at 10 Rockefeller Plaza, Suite 920, New York, NY 10020 in New York County.  Upon information and belief, at all relevant times hereto, individual Defendant Michael C. Phillips is Principal, President and CEO to PREP Co., LLC and Plaintiff worked for PREP Co., LLC in New York City.

8.      Upon information and belief, at all times relevant hereto, Defendant PECO Real Estate Partners, LLC is a domestic limited liability company in Delaware with offices in

Cincinatti, Ohio, Salt Lake City, Utah, and New York City, New York. At all relevant times hereto, Plaintiff worked for PECO Real Estate Partners LLC in New York City and was considered for membership for PECO Real Estate Partners LLC in New York City.

9. Upon information and belief, at all times relevant hereto, Defendant Michael C. Phillips was and is PECO's Principal, President and CEO and a resident of the Salt Lake City, Utah.

## JURISDICTION AND VENUE

10. Jurisdiction is founded upon 28 U.S.C. § 1331 and principles of supplemental jurisdiction under 28 U.S.C. § 1367.

11. Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to Plaintiff's claims occurred in the Southern District of New York.

12. The Court has personal jurisdiction over Defendants because Defendants operate, conduct, engages in and/or carries on a business in the state of New York, committed the retaliatory and offending acts herein described, and/or is engaging in substantial and not isolated activity within the state of New York.

## STATEMENT OF FACTS

13. McGowan has a gold standard profile in real estate. Early in his career, McGowan served as Director of Acquisitions in Koll Organization, rising to the Senior VP of the Midwest and President of the Northeast. McGowan was the Chief Investment Officer of Cornerstone Properties, increasing investments from 1 to 5 billion dollars in real estate in two (2) years. At Generali Lend Lease, McGowan started the business with no investments and achieved 6.5 billion in real estate investments in 10 years.

14. McGowan graduated from Brown University and earned his MBA from Harvard University Graduate School of Business.

15. McGowan had clear international sophisticated real estate experience and contacts to build PECO especially with respect to the SIF and NLIF funds.

16. On or around November 11, 2014, PECO and Phillips made McGowan an employment offer ("Employment Agreement") to be Partner and Chief Executive Officer for Phillips Real Estate Partners, LLC and its related entities which Defendants wanted McGowan to spin out and run. McGowan was to report to Phillips and raise capital for private funds that PECO Real Estate Partners LLC (PREP) will manage and create ongoing enterprise for financial support. McGowan was to supervise the day to day operation of PREP to make sure private funds have all resources necessary to execute their business plans and coordinate the cooperative services Phillips Edison & Company Ltd. (PECO) may supply to PREP prior to complete operating independence.

17. Unfortunately Defendants' titanic goals were not supported with resources by PECO for McGowan to execute them. At first, Phillips convinced McGowan to personally commit to invest $250,000 of his own money into SIF III misrepresenting the investment returns (which later McGowan discovered was common practice not just with him but all investors).

18. McGowan was offered a $300,000 base salary with eligibility of $750,000 in bonus ($150,000 of which was guaranteed for the first two years and paid quarterly).

19. At the time of separation, only $112,500 of such bonus was paid to McGowan despite reaching the profitability objectives under contract which he met with great difficulty without the appropriate resources. Bonus was to be determined based 50% on reaching operating profits for PREP and the SIF and NLIF funds and 50% for performance of the fund

raising and investor relations arm of PREP. Both SIF and NLIF closed prior to McGowan's separation. Therefore, PECO fraudulently induced McGowan into performance and did not pay what he is owed under contract.

20. SIF III and NLIF spins off $2M/year currently in fees due to McGowan's work and are 10 year funds (therefore providing $20M in revenue), plus profit participation of up to 25% or an additional approximately $10M. In terms of profit participation, managers receive $5-10M.

21. PECO also originally offered McGowan long term incentive in the Employment Agreement where he receives 15% ownership interest in PREP. McGowan was entitled to 7.5% in carried interest for SIF III, which was regardless of vesting schedule (a term which PECO and Phillips also breached).

22. McGowan was not provided with his earned vacation days at separation.

23. Under his Employment Agreement, McGowan was to receive $500,000 in mandatory severance for termination without cause. He was also entitled to unvested interests that were earned on the date of separation which were supposed to accelerate and vest. He was to have a fair market value repurchase right from PECO within 6 months of termination. He was to receive a pro rata 15% share of the fair market value of 100% of the management company to be valued by a third party purchaser or valuator.

24. Under the Employment Agreement, "cause" was defined as "willful misconduct or gross negligence in performance of duties to Company, failure to perform duties or follow lawful directives of Board, indictment, conviction, felony, failure to cooperate in any audit, material theft, embezzlement, fraud, malfeasance, misappropriation, dishonesty or material breach of this Agreement or any other Agreement with Company." Cause termination requires

30 day notification.  McGowan can also terminate his Employment Agreement with "Good Cause" which includes material diminution of responsibilities or compensation or failure of Phillips Edison to establish PREP or on or before May 31, 2016.  This would entitle McGowan to an additional 6 months salary, 50% of annual target bonus paid in cash within 30 days as well as the above referenced benefits under the Employment Agreement.

25.     McGowan will be able to demonstrate that he met the standards for "Good Cause" resignation and/or termination without Cause under the Employment Agreement.  First, McGowan was never made the CEO of PREP but Phillips withheld the position for himself.  Phillips made his daughter, Sara Brennan, the Chief Operating Officer although her only prior qualification was in law practice at a junior level and as in house counsel for Phillips, Edison & Co, an appointment made by her father Phillips.  Phillip's daughter's husband, Tim Brennan, was made the head of capital raising which is a key position that McGowan needed to fill with a high caliber performer.  McGowan's son-in-law also works in his business in a role for which he is not qualified.  McGowan was entirely undermined and not equipped to perform at full potential due to Phillips' insistence of placing unqualified members in important seats to work with him.  Nevertheless, as indicated above, McGowan still closed SIF III and NLIF and reached all revenue/profit levels as discussed and under contract.  These circumstances qualify for McGowan to receive his bonus and also to resign with Good Reason.

26.     When McGowan wrote to Phillips as to why Tim Brennan (Phillips' son-in-law) was not qualified for the job, McGowan, rather than Tim Brennan, was then quickly terminated afterwards.  On November 1, 2015, McGowan told Phillips that the investment return numbers he was being asked to present to investors were not correct and constitutes misrepresentation and violation of relevant securities and real estate investment laws.  McGowan suggested amending

6

the misrepresented returns and asking current investors to extend the time to continue capital raise efforts for SIF III.  To this, Phillips responded arrogantly, "Just tell them to get the money to Mike Phillips. No excuses."  Phillips was directing McGowan to raise money without proper regulatory approval and licensing when there was no proper regulatory setup to raise capital for multiple funds.  Phillips' daughter, who is an attorney licensed in California, has admitted to non-compliance with FINRA regulation.  Phillips' son-in-law failed his Series 7 exam and yet continued to work in a role requiring licensure.

27. Meanwhile, McGowan observed many inappropriate expenses such as Phillips' private jet trips, personal trips and expenses with his family to the Kentucky Derby.  Phillips had moved from shared offices in Salt Lake City to more expensive offices in Park City where he, his daughter, son-in-law, and son happened to live.

28. Immediately after McGowan's legitimate reports, Phillips decided to terminate him without cause originally with a $500,000 severance offer which is deeply insufficient for the work he performed and what he is owed under contract.

29. Phillips did not provide McGowan with the 90 day notice period required under the employment contract, which caused professional harm to him both reputationally and caused him to risk his Series 7 securities license.

30. Additionally, Phillips required the execution of a general release to _receive monies that McGowan was entitled to under contract_ which he was not allowed to require to pay contractual severance.

31. Subsequent to the offer, McGowan decided to negotiate this offer with Phillips (contractually negotiated severance and termination benefits are wages and compensation) which

7

is his right under the Fair Labor Standards Act and New York Labor Law (to discuss the terms and conditions of his employment, compensation and benefits openly without retaliation).

32. Immediately, Phillips had his daughter change the "no cause" termination to cause termination. This time Phillips accused McGowan of "fraud" for failure to disclose his lawsuits with prior employers Bovis Lend Lease and Clarion Partners LLC. However, PECO has no policy of required disclosure of publicly filed lawsuits which Phillips (and his daughter who is an attorney) can find easily through public searches and background checks (and McGowan signed releases to conduct background checks). In fact the Clarion Partners lawsuit was filed well after employment commencement and both Phillips and Devon Murphy, the Phillips Edison CFO were made well aware of the dispute before and after McGowan filed against Clarion and never objected to the law suit to enforce his right to payment. There was absolutely no questionnaire, employment application or internal policy in existence at the time of McGowan's hire requiring such disclosure.

33. Additionally, all over the Complaints of the referenced lawsuits which are publicly searchable, the term "compensation" is repeatedly requested in the Bovis Lend Lease action and the term "salary" is repeatedly requested in the Clarion action. Therefore, these are actions for wages protected under the Fair Labor Standards Act and New York Labor Law. In Phillips' unfettered attempt to use any logic to deprive McGowan of contractual rights under his Employment Agreement, Phillips caused himself and his daughter to violate the retaliation provisions of the Fair Labor Standards Act and New York Labor Law in making an employment determination on the basis of an employee's pursuit of owed compensation and salary. Consistent with Phillips' clear conflict of interest in using family in the real estate/investment

8

context, his usage of his own daughter as counsel deprived him of the opportunity of seeking proper employment advice before committing such serious violations in written evidence.

34. Subsequently, Phillips and his son-in-law Tim Brennan disparaged McGowan at a luncheon attended by McGowan's former colleagues where they called McGowan "Fat Barry" and a "Fraud" further undermining McGowan, defaming him, and where Phillips drew inaccurate conclusions from misunderstanding of the facts and law. Jim Shipman is a former member of the PREP Senior Management Team and Phillips also lied about McGowan's departure saying he would have been fired anyway because he is in communication with McGowan who Phillips believe engaged in "treasonous behavior" (simply because he was making legitimate legal and financial compliance reports to Phillips and because he was pursuing his legitimate claims against prior employers concerning pay through proper venues).

## FIRST CAUSE OF ACTION
### Breach of Contract
### (Against All Defendants)

35. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 34 with the same force as though separately alleged herein.

36. Defendants breached the Employment Agreement with Plaintiff by willfully failing to pay Plaintiff the compensation, severance, bonus, equity, and providing notice of termination to which he was entitled per the terms of the Agreement.

37. Defendants breached the Employment Agreement by not accepting the agreement definitions of "Cause," "without cause," and "Good Cause" resignation and by ignoring industry definition and clear employment law.

38. Plaintiff never received any severance or other guaranteed pay under contract such as unused vacation days and adequate notice (and additional compensation) until termination.

39. By reason of its breach of the Agreement, Defendants are liable to Plaintiff for an amount to be determined at trial, plus interest which will be in excess of $5,000,000 for this claim.

## SECOND CAUSE OF ACTION
### Retaliation under the FLSA
**(Against all Defendants)**

40. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 39 with the same force as though separately alleged herein.

41. Plaintiff is a "person" as defined under 29 U.S.C. § 203(a).

42. Plaintiff is an "employee" as defined under 29 U.S.C. § 203(e)(1).

43. Defendants are "employers" as defined under 29 U.S.C. § 203(d).

44. The FLSA contains an anti-retaliation provision that forbids employers to "discriminate against any employee because such employee has filed any complaint" related to FLSA. 29 U.S.C. § 215(a)(3). The Second Circuit has defined the phrase "filed any complaint" to encompass oral complaints made to employers in a context that makes the assertion of rights plain. *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105 (2d Cir. 2015).

45. Plaintiff complained to Defendants as to unfair compensation and severance payment as alleged more specifically in the Statement of Facts.

46. Plaintiff pursued his rights to compensation and salary with previous employers which is protected activity under the FLSA and these other actions were raised in his termination

indicating that his protected activity creates a basis for a termination for "Cause" so that he lost more compensation, severance and other payment rights.

47. Plaintiff's complaints about not receiving fair compensation, bonus, severance, equity, notice of termination, unused vacation and other terms and conditions of employment were protected activities.

48. Shortly after each of Plaintiff's oral and/or written complaints, he suffered immediate adverse employment action and ultimately suffered termination and a change from termination without cause to cause termination as more specifically alleged in the Statement of Facts.

49. Such retaliation is likely to deter other employees at Defendants' place of employment from complaining or taking action about compensation, salary and wage issues.

50. As a result of Defendants' unlawful retaliation, Plaintiff is entitled to compensatory damages, liquidated damages and punitive damages.

51. Plaintiff is also entitled to compensation in an amount to be determined at trial as compensatory damages for emotional distress and non-pecuniary harm suffered as a result of Defendants' retaliatory acts.

52. Defendants' conduct as aforesaid were retaliatory.

53. Accordingly, Defendants are liable to Plaintiff under § 215 of the FLSA for reinstatement and/or front pay, back pay, compensatory damages, punitive damages, liquidated damages, prejudgment and post-judgment interest, costs, and reasonable attorney's fees.

## THIRD CAUSE OF ACTION
### Retaliation under New York Labor Law § 215
### (Against All Defendants)

54. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 53 with the same force as though separately alleged herein.

55. Plaintiff was an "employee" as defined under N.Y. Lab. Law § 190(2).

56. Defendants were "employers" as defined under N.Y. Lab. Law § 190(3).

57. During the course of his employment with and separation from Defendants, Defendants failed to pay compensation, bonus, severance, equity, unused vacation days, and provide notice of termination in violation of New York Labor Law.

58. Plaintiff reported these failures to pay adequately directly to his supervisor orally and in writing as more specifically alleged in the Statement of Facts.

59. Plaintiff pursued his rights to compensation and salary with previous employers which is protected activity under the New York Labor Law and these other actions were raised in his termination indicating that his protected activity creates a basis for a termination for "Cause" so that he lost more compensation, severance and other payment rights.

60. Following Plaintiff's reports to Defendants and his other actions to pursue compensation and salary against prior employers, he suffered adverse employment actions and his employment was terminated by Defendants and his contractual rights to receive more favorable separation terms were violated as more specifically alleged in the Statement of Facts.

61. Such retaliation is likely to deter reasonable employees from complaining about wage issues at Defendants' place of employment or to take any action concerning owed compensation, wages or salary.

62. As a result of the foregoing, Plaintiff has been denied employment, lost wages and benefits, and has incurred damages.

63. As a result of the foregoing, Plaintiff is entitled to appropriate relief, including enjoining the conduct of Defendants, and ordering payment of lost compensation and damages, liquidated damages, costs and reasonable attorney's fees to Plaintiff by Defendants.

### FOURTH CAUSE OF ACTION
### Breach of Fiduciary Duty
### (Against Defendant Michael C. Phillips)

64. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 63 with the same force as though separately alleged herein.

65. As Principal, President and CEO of PECO, Plaintiff's employer and party soliciting Plaintiff's investment, Phillips owes a fiduciary duty to Plaintiff to act in his interests with due care.

66. Phillips breached his fiduciary duties to Plaintiff and standard of care owed by committing Plaintiff to make a quarter million dollar personal investment into his fund misrepresenting investment returns and fraudulently induced Plaintiff into employment with written contractual terms that he knew he would never honor.

67. As a direct and proximate result of Phillips' breach of fiduciary duty, Plaintiff has suffered monetary damages in an amount to be determined at trial, but not less than $5,000,000 plus pre-and post-judgment interest thereon.

## FIFTH CAUSE OF ACTION
### Fraudulent Inducement
### (Against Defendant Michael C. Phillips)

68. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 67 with the same force as though separately alleged herein.

69. Phillips was aware of Plaintiff's other employment and investment opportunities when he recruited Plaintiff.

70. Phillips made representations regarding Plaintiff's compensation, bonus, equity, financial and other protections in case of separation and misrepresented the investment returns on his business to obtain Plaintiff's personal money and other valuable resources, time and commitment.

71. Phillips was aware that Plaintiff would reasonably rely on such representations in accepting employment and thus severing his other more secure opportunities and investing his own money and other resources and time into Phillips' companies.

72. Had Phillips not made such misrepresentations and fraudulent representations, but instead revealed the true financial conditions of his businesses and their clear inability or unwillingness to pay proper compensation, bonus, equity, financial and other protections in case of separation, Plaintiff would not have commenced work for Defendants or pitched Defendants' business to his network, contacts and s to invest in Defendants' funds.

73. Plaintiff was wrongfully terminated very shortly after being hired despite having performed his duties in a suitable and exceptional manner because of Defendants' insufficient financial conditions, fraud, and ability to provide resources and support to Plaintiff.

74. At all relevant times during the recruitment of Plaintiff, Phillips knew or should have known that his representations and/or promissory statements were false, i.e. his funds

would not provide any adequate investment returns to be a profitable investment for Plaintiff and his contacts, and further that Defendants never intended to pay Plaintiff the agreed amounts and terms in the Employment Agreement.

75.     The false representations, actions and omissions alleged herein, which induced Plaintiff to sever his other opportunities and destroy his reputation, were knowingly undertaken by Phillips and were intended to cause, or should have reasonably been anticipated to cause, economic injury and mental suffering to Plaintiff.

76.     As a result of the foregoing, Plaintiff has been damaged by the loss of past and future income, including salary, bonus, severance, equity, unused vacation days, lack of notice of termination (and additional pay), assorted fringe benefits, and the financial costs of seeking and developing new employment and investment opportunities.  Plaintiff lost employer sponsored healthcare coverage, took our a new line of credit against his home, suffered destruction of credit, and lost personal and business relationships amongst other things.  This experience also caused him great emotional distress.

77.     By virtue of Phillips' fraudulent inducement, Plaintiff is entitled to compensatory and punitive damages.

### SIXTH CAUSE OF ACTION
**Quantum Meruit**
**(Against all Defendants)**
**(Pled in the Alternative to Breach of Contract)**

78.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 77 with the same force as though separately alleged herein.

79.     Plaintiff rendered valuable services to Defendants by his countless hours, support, efforts, and successes in creating and building profitable funds for Defendants.

80. Defendants accepted, encouraged, utilized and enjoyed Plaintiff's efforts, services, professional credentials and reputation as aforesaid.

81. Defendants knew as a result of Plaintiff's conduct, multiple discussions, correspondence, emails, notes were created and that Plaintiff expected to be paid compensation, bonus, severance, equity, unused vacation days, be provided with termination notice and receive investment returns in accordance to the parties' agreements.

82. Despite such knowledge and despite Plaintiff's efforts, services and the benefits gained by Defendants as a result thereof, Defendants refuses to pay Plaintiff in accordance with parties' agreement what he is justly owed.

83. As a result of Defendant's refusal to pay Plaintiff as described above, Plaintiff has suffered damages in an amount to be determined at trial, but in no event less than $5,000,000.

**SEVENTH CAUSE OF ACTION**
**Retaliation for Engagement in Legal Recreational Activities in violation of New York Labor Law § 201-D**
**(Against All Defendants)**

84. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 83 with the same force as though separately alleged herein.

85. Defendants violated New York Labor Law 201-D by terminating Plaintiff on the unlawful basis of his legal recreational activities in pursuing his prior employers for a protected basic legal right of obtaining compensation and salary for services which Plaintiff engaged in outside of working hours, off the employer's premises and without use of the employer's equipment or other property.  The violation is especially egregious because Defendants were intending to commit the same violation and breach of employment agreements.

86. Plaintiff suffered economic damages as a result of this unlawful termination.

87. Pursuant to New York Labor Law 201-D(7)(b), Plaintiff is entitled to an award of compensatory damages in the sum of no less than $5,000,000 and equitable injunctive relief against the defendants including reinstatement, back pay, front pay, costs and disbursements.

### EIGHTH CAUSE OF ACTION
### Violation of New York Wage Theft Prevention Act
### (Against All Defendants)

88. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 87 with the same force as though separately alleged herein.

89. At all relevant times, Plaintiff was employed by Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

90. Defendants willfully violated Plaintiff's rights by failing to provide him with the wage notices required by the Wage Theft Prevention Act when he was hired or at any other time during his employment with Defendants.

91. Defendants willfully violated Plaintiff's rights by failing to provide him with weekly wage statements required by the Wage Theft Prevention Act at any time during his employment.

92. Due to Defendants' New York Labor Law violations relating to lack of a wage notice at the commencement of employment, Plaintiff is entitled to recover from Defendants statutory damages of $50 per day for the entire course of his employment, up to the maximum statutory damages.

93. Due to Defendants' New York Labor Law violations relating to lack of wage statements with his pay clarifying commissions, Plaintiff is entitled to recover from Defendants' $250 per day for the entire course of his employment, up to the maximum statutory damages.

## NINTH CAUSE OF ACTION
### Breach of Covenant of Good Faith and Fair Dealing
### (Against All Defendants)

94. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 93 with the same force as though separately alleged herein.

95. It is presumed that parties to contracts undertake their respective obligations in good faith, with intent to deal fairly.

96. In light of Defendants' obvious and blatant bad faith and wrongdoing, by failing to honor the terms of both the oral and written agreements between Plaintiff and Defendants, and engaging in misrepresentation and fraud, Defendants have breached their duties of good faith and fair dealing.

97. Due to the bad faith conduct of Defendants, punitive damages should be assessed so that it is deterred from attempting such harmful employment practices in the future.

98. As a direct result of Defendants' actions, Plaintiff has suffered damages, including consequential damages, in an amount to be determined at trial.

## TENTH CAUSE OF ACTION
### Violation of New York Labor Law §193 – Recovery for Expenses
### (Against All Defendants)

99. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 98 with the same force as though separately alleged herein.

100. Defendants promised to reimburse Plaintiff for expenses as needed throughout the course of his employment.

101. Defendants required Plaintiff to pay, without reimbursement, the costs and expenses to perform his executive duties further reducing his wages and commission in violation of New York Labor Law. N.Y. Lab. Law §§ 193 and 198-b.

102. Plaintiff has not been reimbursed for his personal investments into the business which was a required condition of continued employment, travel and other expenses.

103. Plaintiff has been damaged in an amount to be determined at trial.

## JURY DEMAND

Plaintiff demands a trial by jury.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. For the first cause of action, damages to be determined at trial;

B. For the second cause of action, damages to be determined at trial;

C. For the third cause of action, damages to be determined at trial;

D. For the fourth cause of action, damages to be determined at trial;

E. For the fifth cause of action, damages to be determined at trial;

F. For the sixth cause of action, damages to be determined at trial;

G. For the seventh cause of action, damages to be determined at trial;

H. For the eighth cause of action, damages to be determined at trial;

I. For the ninth cause of action, damages to be determined at trial; and

      J.  For the tenth cause of action, damages to be determined at trial.

Dated:    New York, New York
November 4, 2017

By: _____
Tiffany Ma, Esq.
YOUNG & MA, LLP
575 Lexington Avenue, Fourth Floor
New York, NY 10022
(212) 971-9773
tma@youngandma.com

Tom Fini, Esq.
CATAFAGO FINI LLP
350 Fifth Avenue, Suite 7710
New York, NY 10118
(212) 239-9669
tom@catafagofini.com

*Attorneys for Plaintiff*